Washington, J.,
delivered the opinion of the court, as follows :: — Thomas Irving is a merchant of New York, and claims certain packages of merchandise consigned to him by Robertson & Hastie, and also three boxes of merchandise consigned to him by Pott & McMillan. The consignors were British subjects, residing in Great Britain, at the time that these goods were shipped, which, according to the terms of the bills of lading, were on account and risk of the shippers.
It is not pretended, that the real ownership in these goods was not vested in the consignors, enemies of the United States ; but the claimant founds his pretensions on a lien created on the goods consigned by Robertson & Hastie,' in consequence of an advance made to the shippers, in consideration of the consignment, by his *agent in Glasgow ; and on the goods shipped by Pott & McMillan, in virtue of a general balance of *- *265 account due to him as their factor. To establish these claims, in point of fact, an order for further proof is asked for, and the question is, whether’, if proved, the claim can, in point of law, be sustained ?
The doctrine of liens seems to depend chiefly upon the rules of jurisprudence established in different countries. There is no doubt, but that, agreeable to the principles of the common law of England, a factor has a lien upon goods of his principal, in his possession, for the balance of account due to him ; and so has a consignee, for advances made by him to the consignor. The consignor or owner cannot maintain an action, against his factor, to recover the. property so placed in his possession, without first paying or tendering what is thus due to the factor. But this doctrine is unknown in prize courts, unless in very peculiar cases, where the lien is imposed by a general law of the mercantile world, independent of any contract between the parties. Such is the case of freight upon enemies’ goods, seized in the vessel of a friend, which is always decreed to the owner of the vessel. Abbott on Shipping 184. It is, to use the words of Sir W. Scott, “ an interest directly and visibly residing in the substance of the thing itself.” The possession of the property is actually in the owner of the ship, of which, by the general mercantile law of all nations, he .cannot be deprived, until the freight due for the carriage of it is paid. He has, in fact, a kind of property in the goods, by force of this general law, which a prize court ought to respect and does respect. On the other hand, the captor, by stepping into the shoes of the enemy owner of the goods, is personally benefited by the labor of a friend, and ought, in justice, to make him the proper compensation : and on the other, the ship-owner, by not having carried the goods to the place of their destination, and this, in consequence of the act of the captor, would be totally without remedy to recover his freight against the owner of the goods.
But in cases of liens created by the mere private contract of individuals, depending upon tho different laws of different countries, the difficulties which an examination of such claims would impose upon the captors, and *4201 *even uPon the prize courts, in deciding upon them, and the door ^ which such a doctrine would open to collusion between the enemy owners of the property and neutral claimants, have excluded such cases from the consideration of those courts. In the case of The Tobago, 5 Rob. 196, where an attempt was made by a Britith subject, to set up a bottomry interest in an enemy’s ship, Sir W. Scott observed, that no precedents to sanction such a claim could be produced : and he very properly concluded, that this was strong evidence that it had not been the practice of the court to consider such bonds as properly .entitled to its protection. And it seemed to be conceded, that, upon the same principle, the captor could not entitle himself to the advantage of such liens, existing in an enemy, upon neutral property. From this it appears, that the doctrine of the prize courts upon this subject, woi’ks against as well as in favor of captors. The case of The Marianna, 6 Rob. 24, avoids all the objections made to the application of the case of The Tobago to the present. It is precisely in point. ■
The principal strength of the argument in favor of the claimant in this case, seemed to be rested upon the position, that the consignor in this case could not have countermanded the consignment, after delivery of the goods to the master of the vessel; and hence it was inferred, that the captor had *266 no right to intercept the passage of the property to the consignee. This doctrine would be well founded, if the goods had been sent to the claimant, upon his account and risk, except in the case of insolvency. But when goods are sent upon the account and risk of the shipper, the delivery to the master is a delivery to him as agent of the shipper, not of the consignee ; and it is competent to the consignor, at any time before actual delivery to the consignee, to countermand it, and thus to prevent his lien from attaching. Upon the whole; the court is of opinion, that, upon the reason of the case, as well as upon authority, this claim cannot be supported, and that the sentence of the court below must be affirmed with costs. ■